THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JAMES COONAN, Appellant.—Judgment of conviction of assault, second degree, and weapon possession, Supreme Court, New York County, rendered January 20, 1977, reversed, on the law, and the case remanded for a new trial. The focal error in this shooting case was the court's flat refusal to charge that if the jury accepted defendant's version that he had picked up the gun after another person had fired it, he was entitled to acquittal. The strongest factual argument that the evidence belies this claim does not make this refusal any less an error which deprived defendant of a proper and vital instruction as to his main argument, thus effectively removing it from the jury's consideration. This is far more than a technical error; even our dissenting brother agrees "that the court's charge as to this was not adequate", though he makes the invalid distinction of applying the requested instruction solely to the count of possession. Quite obviously, had defendant not "possessed" the weapon until after it had been used in the assault, he could not have perpetrated the latter crime. The court's complete failure to follow the dictates of CPL 300.10 (subd 2) deprived defendant of any vestige of fair consideration of his position, and there should be a new trial. Concur—Evans, Markewich and Yesawich, JJ.; Kupferman, J. P., and Sandler, J., dissent in the following memorandum by Sandler, J.: At about midnight on June 20, 1975, an altercation with racial overtones between a white man named John Reid and one or more of a group of Black men developed into a general melee when Reid sought assistance from the inhabitants of a nearby bar on the corner of 43rd Street and 10th Avenue. A group of men, variously armed with sticks and bats, emerged from the bar, advanced towards the Black group, and a confused struggle followed. In the course of this episode a shot was fired striking one of the Blacks, Vanderbilt Evans, in the shoulder. The defendant was immediately arrested by two anticrime police officers who had observed the incident as it had been developing. In an indictment thereafter filed, the defendant was charged with assault in the second degree, criminal possession of a weapon in the second degree (alleging intent to use unlawfully) and criminal possession of a weapon in the third degree (possession of a loaded firearm). The central issue in the trial, of course, was whether the evidence established beyond a reasonable doubt that the defendant had shot Evans. Two diametrically different versions were presented to the jury. The evidence adduced by the District Attorney was to the effect that during the struggle that followed the emergence of the group from the bar, the defendant pulled a .38 caliber gun from his pocket and fired a shot that struck Evans. Evans himself testified that he heard a pop and saw a "flash" coming from the hand of the defendant. One of the two anticrime officers, William Molloy, testified that from a distance of 10 to 12 feet, with no obstruction between him and the defendant, he saw the defendant step forward, remove a gun from his right front pocket and fire a shot. The second officer, Theodore Lecouri, testified that he heard the shot, turned and saw the defendant with

a gun in his hand. Both officers testified that the defendant was twice ordered to drop the gun and that Officer Molloy then approached the defendant, backed him into a doorway and removed the gun from the defendant's right hand. There were five live rounds and one spent cartridge in the gun. The defense version, presented through four witnesses (all of whom knew each other and three of whom knew the defendant's father or the defendant) was that the gun was discharged while in the possession of one of the Black men, that it fell from him in the struggle, and was kicked over to the defendant who picked it up when the police arrived at the scene. The defendant was convicted of assault in the second degree and criminal possession of a weapon in the third degree, the lesser of the two possession counts submitted to the jury. Reversal is sought on two grounds, neither of which seems to me tenable. First it is argued that there is a fatal repugnance between the defendant's conviction of assault in the second degree and his acquittal on the count charging him with possession of a weapon with intent to use unlawfully. As to that issue, the decision of the Court of Appeals in *People v Haymes* (34 NY2d 639), is dispositive. In words that apply precisely to the situation here presented, the court said (p 640): "We could find the jury's verdicts reversibly inconsistent, or 'repugnant', only in a logical vacuum, for the record is utterly devoid of any indication that the jury's acquittal on the weapons charge, an essential element of which was intent to use unlawfully, represents a finding of lack of intent to use the gun unlawfully at the time of the shootings. The record clearly shows that the jury did not understand the continuing nature of the possession element and grounded its acquittal on its finding that at the time defendant acquired the gun he did not intend to use it unlawfully. * * * The verdicts are rationally reconcilable on this record and may stand together." Secondly, it is urged on behalf of the defendant that the trial court failed to instruct the jury with sufficient clarity that the defendant should be acquitted if it accepted the defense version that the defendant had picked up the gun after the shot had been fired and just before his arrest. (See *People v Singleteary,* 54 AD2d 1088.) I agree that the court's charge as to this was not adequate. A persuasive argument for reversing the defendant's conviction of the possession count would have been presented if that were the only count before the jury or if the jury had acquitted the defendant of the assault count. However, it is not easy to see how the inadequacies of the charge with regard to momentary possession could have been prejudicial in light of the factual finding by the jury, in direct contradiction to the defense position, that the defendant had in fact fired the shot. Indeed, the court, with the explicit agreement of defense counsel, had charged the jury that the defendant must be convicted of one of the two possession counts if they convicted him of the assault charge. Whatever may be said with regard to the possession count, however, I am baffled at the proposition that the inadequacy of the charge as to that count in some way requires reversal of the defendant's conviction for assault. As already pointed out, the central issue before the jury was whether the defendant fired the shot. All the evidence in the case presented by both sides focused on that question, as did the extended summations by defense counsel and the prosecutor, and as to that issue, the court's charge could not have been clearer. Given the clarity with which this basic issue was presented, I find singularly unpersuasive the argument that the jury may have been misled into convicting the defendant of having shot Evans because it was inadequately instructed as to whether the defendant would have been guilty of the possession count if he had first picked up the gun after the shot had been fired. For the reasons indicated, the judgment of conviction should be affirmed.